**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT O. BESCOE,

    Plaintiff,

v.

Case No. 05-74807
Hon. Gerald E. Rosen

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,

    Defendant.
_____/

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW REGARDING DEFENDANT'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on \_\_\_September 25, 2008_____

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

**I. INTRODUCTION**

In the present suit, Plaintiff Robert O. Bescoe challenges the decision of the Defendant Central States, Southeast and Southwest Areas Pension Fund to pay disability benefits at a monthly rate lower than the rate to which Plaintiff believes he is entitled. This Court's subject matter jurisdiction over this case rests upon Plaintiff's claim for benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

1

Presently before the Court is Defendant's motion for judgment on the administrative record, through which Defendant requests that the Court affirm its decision to pay disability benefits to Plaintiff under "Benefit Class 17b," as opposed to the higher "Benefit Class 18" level of benefits that Plaintiff seeks to recover in this case. In support of its motion, Defendant argues that its decision is based upon a reasonable interpretation of the governing plan documents, and thus cannot be overturned under the deferential "arbitrary and capricious" standard of review that applies here. In response, Plaintiff does not challenge Defendant's interpretation of the relevant plan language, but nonetheless argues that he is entitled to additional disability benefits in light of his reliance on allegedly misleading information contained in a letter he received from Defendant.

Defendant's motion has been fully briefed by both parties and is ready for decision.[1] Upon reviewing the parties' submissions, the pleadings, and the administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs," see Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan, following the guidelines set forth by the Sixth Circuit in Wilkins v. Baptist Healthcare

---

[1]The Court notes that Plaintiff has not filed a cross-motion seeking reversal of Defendant's decision, but instead has advanced his arguments for reversal solely in his response to Defendant's motion.

System, Inc., 150 F.3d 609, 619 (6th Cir. 1998).[2] This opinion and order sets forth the Court's findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted.

## II. FINDINGS OF FACT

**A.     The Parties**

In light of the arguments made by the parties in their submissions in support of and opposition to Defendant's motion, the relevant facts of this case may be briefly summarized. As of October of 2000, Plaintiff Robert O. Bescoe had been employed for approximately 22 years as a truck driver for Wixom Ready Mix, and he was a member of Local 247 of the International Brotherhood of Teamsters ("IBT"). Pursuant to the terms of a collective bargaining agreement ("CBA") negotiated with Local 247, Wixom Ready Mix was obligated to make contributions to the Defendant Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") on Plaintiff's behalf.

The Defendant Pension Fund is a multiemployer pension benefit plan governed by ERISA, which provides pension and disability benefits to workers in the trucking industry and related industries pursuant to CBAs negotiated between the employers and the IBT. The Pension Fund is administered by a Board of Trustees that is composed of an equal

---

[2]Specifically, Wilkins holds that neither summary judgment nor a bench trial provides an appropriate procedural basis for resolving ERISA actions to recover benefits. Rather, the Sixth Circuit suggested that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly." Wilkins, 150 F.3d at 619.

3

number of employer and employee trustees, and that has duties and powers as set forth in the Pension Fund Trust Agreement (the "Trust Agreement"). (See Defendant's Motion, Ex. A.) Apart from the Trust Agreement, the other relevant document in this case is the Pension Fund Plan document (the "Plan") (see Defendant's Motion, Ex. B), which contains the requirements for participation in the Pension Fund and the terms and conditions for payment of pension and disability benefits.

**B.     The Pertinent Plan Provisions**

Under the Plan, an eligible employee is entitled to receive monthly disability benefits upon "becom[ing] totally and permanently disabled . . . before his 62nd birthday and while he is an Active Participant, or within 2 calendar years after becoming an Inactive Participant," provided that certain years-of-service and other criteria are met. (Plan at 75.) The Plan further provides that a determination of disability by the Social Security Administration shall be "accept[ed] . . . as evidence of total and permanent disability." (Id.) Payment of disability benefits under the Plan ceases when a Participant becomes a "Pensioner" — *i.e.,* when he becomes eligible to receive a retirement pension under the Plan — at which point the Plan commences to pay in accordance with the terms governing retirement pension benefits. (Id. at 12, 20, 76.)

The monthly amount of disability benefits paid under the Plan is determined by reference to an employee's "Benefit Class." This "Benefit Class," in turn, is determined by either the "Continuous Contribution Method" or the "Non-Continuous Contribution Method," both of which depend upon the rate of a participant's contributions to the

Pension Fund pursuant to a CBA. (Id. at 34-36.) For a "Participant whose Benefit Class is any of 4 through 17a and 17b (regardless of his age when he became disabled)," the Plan calls for a monthly disability benefit of $250. (Id. at 75.)[3] In contrast, for a "Participant whose Benefit Class is 18 or 18+ on the date on which he becomes disabled," the Plan confers a considerably larger disability benefit, ranging from $650 to $1000 per month depending on the employee's age when he becomes disabled. (Plan at 76.)[4]

The Trust Agreement confers upon the Trustees the "authority to control and manage the operation and administration of the Trust in accordance with applicable law." (Trust Agreement at 9.) It further grants them the authority to "formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust," and provides that all such rules and regulations "shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder." (Id. at 12.)

Next, the Trustees are empowered to "construe the provisions of this Agreement and the terms and regulations of the Pension Plan," and any such "construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and

---

[3]As Defendant points out, Plaintiff has actually been receiving a monthly disability benefit of $265, with the $15 difference attributable to a settlement in a class action lawsuit. (See Defendant's Motion, Ex. C, Admin. Record at 99.)

[4]Defendant indicates that if Plaintiff were deemed to be eligible for disability benefits at the elevated Benefit Class 18 level, he would have received a $650 monthly benefit under this Plan provision. Thus, the difference between the benefits sought by Plaintiff and the benefits paid by Defendant is just under $400 per month.

5

Employers." (Id. at 16.) The Trust Agreement also vests the Trustees with "discretionary and final authority in construing plan documents of the Pension Fund." (Id.) Similarly, the Plan states:

> All decisions by the Board of Trustees, including all rules and regulations adopted by the Board of Trustees, all amendments of the Trust Agreement and this Pension Plan by the Board of Trustees and all interpretations by the Board of Trustees of any of said documents, shall be binding upon all parties to the Trust Agreement, the Union, each Contributing Employer, all individuals claiming benefits pursuant to this Pension Plan or any amendment thereof and all other individuals engaging in any transaction with the Pension Fund.

(Plan at 85.)

## C. Plaintiff's Injury and Claim for Disability Benefits

On October 18, 2000, Plaintiff injured his right arm while climbing out of a cement truck. He was off work until December of 2001, when he attempted to return to his job. This effort was unsuccessful, and Plaintiff permanently ceased working on February 19, 2002.

On May 20, 2004, Plaintiff was found by an administrative law judge to be entitled to Social Security disability insurance benefits, with this period of disability dating back to October 18, 2000, the date of his injury. (See Admin. Record at 89.) Following this determination, Plaintiff applied for disability benefits under the Plan, and he was notified on August 19, 2004 that his application had been approved and that he would be paid a monthly benefit of $265, (see id. at 58), an amount corresponding to Benefit Class 17b.

In a September 20, 2004 letter sent by his attorney — Barry Keller, who continues

6

to represent Plaintiff in this action — Plaintiff challenged the amount of this benefit, and contended that he was entitled to a $665 monthly benefit corresponding to Benefit Class 18. (See id. at 56.) In support of this claim, Plaintiff pointed to an "annual statement of benefits" he had received from the Defendant Pension Fund on June 11, 2003, in which he was advised that his "established benefit class is 18" and was informed about the retirement benefits he would receive under the Plan if he retired at age 65. (Id. at 60.) In addition, Plaintiff's attorney noted that while the Social Security award of disability benefits was retroactive to 2001, Plaintiff had continued to "work[] through 2002 with contributions paid by his employer through the first three months of 2003." (Id. at 56.) Accordingly, Plaintiff's attorney reasoned that "[b]ecause [Plaintiff] attempted to work through 2002 he should be eligible an[d] entitled to receive his pension at the level 18 classification." (Id.)

Defendant responded to this letter on September 28, 2004, explaining the basis for its decision to award disability benefits at Benefit Class 17b. (See id. at 61.) Specifically, Defendant stated that the amount of Plaintiff's disability benefit was "based on the benefit class [he] had established as of the date of his disability," and that this date, in turn, had been derived from the Social Security Administration's decision that Plaintiff was disabled as of October 18, 2000. (Id.) As of that date, Plaintiff "was established at benefit class 17B," and benefits thus were awarded at the $265 monthly level called for by the Plan for this Benefit Class. (Id.) Defendant noted, however, that Plaintiff could switch to a retirement benefit at age 65, and it further informed him that he had a right to

7

appeal Defendant's determination. (Id.)

Plaintiff pursued all of the available steps of administrative appeal, continuing to argue (i) that he had continued to work until February of 2002, well past the date in October of 2000 that the Social Security Administration deemed to be the onset of his disability, (ii) that his employer had continued to make contributions to the Pension Fund on his behalf throughout 2002, and (iii) that, although he did not work after February of 2002, he "remained available for limited work" past that point, as evidenced by the efforts by his employer and its insurance carrier to "explor[e] vocational rehabilitation." (See id. at 23-24, 33.) Defendant denied these appeals, however, explaining (i) that it had relied on the Social Security Administration's determination in identifying Plaintiff's date of disability as October 18, 2000, and (ii) that even if Defendant were to consider Plaintiff's last day of work in February of 2002 as his date of disability, his bargaining unit did not progress to Benefit Class 18 until June of 2002, several months after he had stopped working. (See id. at 1-2, 30.) In addition, Defendant again pointed out that Plaintiff would be entitled to switch from a disability benefit to higher retirement benefit at age 65,[5] and it noted that the Pension Fund contributions made by Plaintiff's employer on his behalf after he stopped working in February of 2002 would be credited toward this future retirement benefit. (See id. at 2, 30.) This suit followed, with Plaintiff seeking reversal

---

[5]Defendant stated that this retirement benefit would be $1,502.79 per month for life, contingent upon which options Plaintiff selected. (Id. at 30.) Although Defendant did not indicate which Benefit Class this would correspond to, this monthly amount is roughly the same as the estimate provided to Plaintiff in June of 2003, which was predicated on Plaintiff having attained the level of Benefit Class 18. (Id. at 60.)

8

of Defendant's decision to award him disability benefits under Benefit Class 17b.

## III. CONCLUSIONS OF LAW

### A. The Standards Governing Defendant's Motion

A participant in or beneficiary of a plan governed by ERISA may bring suit in federal district court to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Courts review *de novo* a denial of benefits challenged under this provision, unless the benefit plan confers upon the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a more deferential "arbitrary and capricious" standard applies. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996).

In this case, Defendant contends, and Plaintiff concedes, that the "arbitrary and capricious" standard governs the Court's review, in light of the language in the Trust Agreement authorizing the Trustees to "construe the provisions of this Agreement and the terms and regulations of the Pension Plan," and providing that any such "construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers." (Defendant's Motion, Ex. A, Trust Agreement at 16.)[6] This standard is the "least demanding form of judicial review," under which this Court must uphold a denial

---

[6]Indeed, the Sixth Circuit has squarely held that this precise language contained in Defendant's Trust Agreement triggers the deferential "arbitrary and capricious" standard of review. See Whisman v. Robbins, 55 F.3d 1140, 1144 (6th Cir. 1995).

9

of benefits if it is "rational in light of the plan's provisions." Monks v. Keystone Powdered Metal Co., 78 F. Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted), aff'd, 2001 WL 493367 (6th Cir. May 3, 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citations omitted), cert. denied, 495 U.S. 905 (1990). "Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." Marchetti v. Sun Life Assurance Co., 30 F. Supp.2d 1001, 1008 (M.D. Tenn. 1998).

Finally, in reviewing Defendant's decision, the Court is "confined to the record that was before the Plan Administrator," and "may not admit or consider any evidence not presented to the administrator." Wilkins, 150 F.3d at 615, 619. The pertinent record, however, is not limited solely to the evidence before the administrator at the time of its initial decision, but also includes materials considered during the administrative appeals process. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991).

**B.      Defendant's Decision to Award Disability Benefits Under Benefit Class 17b Was Not Arbitrary and Capricious.**

With the above standards in mind, the Court now turns to the benefit determination at issue here — namely, Defendant's decision that Plaintiff was entitled to a monthly disability benefit corresponding to Benefit Class 17b, as opposed to the larger benefit he

would receive if deemed to be in Benefit Class 18.  In challenging this decision before this Court, Plaintiff no longer contends, as he did in his administrative appeals, that Defendant erred in its interpretation of the Plan as calling for Plaintiff's Benefit Class to be determined by reference to his date of disability.  To the contrary, Plaintiff now acknowledges that Defendant's decision on this point was "perhaps rational[]," (Plaintiff's Response Br. at 5) — a concession which defeats any claim that this decision was arbitrary and capricious.  See Monks, 78 F. Supp.2d at 657 (explaining that a benefit determination is not arbitrary and capricious if it is "rational in light of the plan's provisions" (internal quotation marks and citations omitted)).[7]  Instead, Plaintiff now relies principally upon a statement of benefits he received from Defendant on June 11, 2003, (see Admin. Record at 60), asserting that this statement — which he received before applying for disability benefits under the Plan, but not before applying for Social Security disability benefits — led him to believe that he had attained Benefit Class 18 and would receive disability benefits at that level.  Alternatively, Plaintiff contends that Defendant acted arbitrarily and capriciously by failing to present his claim to a "Special Hardship Appeal Committee" referenced in the Plan.  (See Plan at Appendix H-3.)  The

---

[7]In conceding this point, Plaintiff evidently recognizes that whether Defendant were to use the date of disability found by the Social Security Administration (October 18, 2000) or the date Plaintiff stopped working (February 19, 2002), the Benefit Class he had attained as of either of these dates would be 17b.  In addition, Plaintiff apparently recognizes the reasonableness of Defendant's construction of the Plan as awarding disability benefits at the level of Benefit Class 18 only if a participant is in this Benefit Class "on the date on which he becomes disabled." (Plan at 76.)  Again, regardless of which possible date of disability Defendant had used — October 18, 2000 or February 19, 2002 — Plaintiff was not in Benefit Class 18 on the date he became disabled.

11

Court considers each of these contentions in turn.

In pointing to the June 11, 2003 statement of benefits he received from Defendant, and through his citation to the Sixth Circuit's decision in <u>Rhoton v. Central States, Southeast & Southwest Areas Pension Fund</u>, 717 F.2d 988 (6th Cir. 1983), Plaintiff evidently means to appeal to an estoppel-based theory of recovery. In <u>Rhoton</u>, 717 F.2d at 989, the plaintiff plan participant initially applied for and received a disability pension, but then attempted a few months later to switch to an increased early retirement benefit. The defendant plan administrator denied this request, citing plan language that it construed as precluding the plaintiff from selecting a different type of benefit once he had initially chosen a disability pension. The Sixth Circuit held that this benefit denial was arbitrary and capricious, finding that there was "[n]o language, either in the Plan or [the summary plan description], suggest[ing] that [the plaintiff] was not at liberty to effect such a change" from one type of benefit to another. 717 F.2d at 990.

In further support of its holding, the court took "special note that the [defendant plan administrator's] interpretation was never communicated to the pensioner," and that he "was never warned about the adverse consequences of his election [of disability benefits] as the Plan was construed by [the administrator]." 717 F.2d at 992. In particular, the court cited a letter in which the plan administrator "inform[ed] [the plaintiff] of his option to choose either disability or early retirement," but said nothing about the "finality of his decision." 717 F.2d at 992. Thus, there was "[n]othing in the record" — whether in the plan documents or in the administrator's communications to the

plaintiff — that would have given the plaintiff "reason to understand that if [he] elected to receive a disability pension, he could not later decide to take early retirement." 717 F.2d at 992; see also Helwig v. Kelsey-Hayes Co., 93 F.3d 243, 250 (6th Cir. 1996) (citing Rhoton as an example of the Sixth Circuit's "refus[al] to accept employer interpretations of benefits documents where the employee was not given any notice of the adverse interpretation and had no reason to know of it").

It is this latter aspect of Rhoton that Plaintiff appeals to here. In particular, Plaintiff suggests that the June 11, 2003 letter he received from Defendant, like the letter received by the plaintiff in Rhoton, failed to alert him that his subsequent application for disability benefits would result in an award of benefits corresponding to Benefit Class 17b. To the contrary, this letter affirmatively stated that Plaintiff's "established benefit class is 18." (Admin. Record at 60.) Under these circumstances, Plaintiff contends that Defendant's decision to award a reduced level of benefits, like the defendant plan administrator's determination in Rhoton that the plaintiff could not switch to a different type of benefit, should be set aside as arbitrary and capricious.

The Court finds that Rhoton is inapposite here, on a number of grounds. First and foremost, Rhoton's discussion of the insufficiency of the plan administrator's communication to the plaintiff came only *after* the court had held that the administrator's interpretation of the plan lacked support in the language of the plan itself. Against this backdrop, the letter from the plan administrator compounded the problem, because neither it nor the underlying plan provided notice to the plaintiff that "his choice of benefits

13

would be irrevocable." Rhoton, 717 F.2d at 992. Here, in contrast, Plaintiff concedes that Defendant's interpretation of the Plan is "rational[]," and the Court likewise has observed that the language of the Plan is reasonably construed as restricting Benefit Class 18 disability benefits to those participants who have attained this Benefit Class "on the date on which [they] become[] disabled." (Plan at 76.) Thus, whatever might be said about the correspondence Plaintiff received from Defendant, the Plan itself provided notice that Plaintiff's disability benefits would be determined by reference to his Benefit Class on the date he became disabled.

To be sure, even if a plan's provisions are clear, a plan administrator's communication to a participant on a specific matter might cause some confusion or uncertainty if it appears to contradict the terms of the plan. Yet, the June 11, 2003 statement of benefits cannot fairly be said to have done so. First, it contained limiting language about the information it disclosed, including: (i) a caution that the statement "contains estimates which are subject to change and is not a guarantee of benefits," and (ii) a notice that "[a]ny benefits to which you may be entitled will be paid in accordance with the terms of the Pension Plan." (Admin. Record at 60.) Next, the statement provided an estimate only of Plaintiff's "retirement benefit," and did not purport to address Plaintiff's eligibility for disability benefits or the amount of such benefits to which he might be entitled. (Id.)

Finally, and most importantly, the statement expressly provided at the outset that the information therein was current "[a]s of 12/31/2002." (Id.) By that date, of course,

14

Plaintiff *had* reached Benefit Class 18, a fact that the statement accurately disclosed. Yet, nothing in this statement provided any assurance that Plaintiff's Benefit Class as of December 31, 2002 would determine the amount of benefits he would receive under any application he might subsequently file for any sort of benefits. In particular, the statement did not purport to override (or even address) the Plan provisions that look to the date of disability in determining the amount of benefits to be paid. To the contrary, the statement explained that "[a]ny benefits to which you may be entitled will be paid in accordance with the terms of the Pension Plan." (Id.) Thus, while the statement did not expressly inform Plaintiff that his Benefit Class might not be 18 if he applied for benefits in the future but claimed a date of disability in the past, neither did it misrepresent how an award of benefits would be determined under these circumstances. The statement was wholly silent on this subject, and was plainly meant to address the separate subject of retirement benefits. This distinguishes this case from Rhoton, in which the plan administrator's communication to the plaintiff compounded the uncertainty created by the terms of the plan itself, leaving him to make an irrevocable election without any notice that he was doing so.

Nonetheless, Plaintiff contends that he relied to his detriment on the June 11, 2003 statement, and that he might have proceeded differently if he had known that the Benefit Class of 18 disclosed in this statement would not apply to his claim for disability benefits. The courts have recognized that a plan administrator may be estopped from enforcing the terms of an ERISA plan by making a misrepresentation about the plan's terms or benefits.

See, e.g., Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 456 (6th Cir. 2003); Sprague v. General Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998); Kolpacke v. CSX Pension Plan, 554 F. Supp.2d 733, 745 (E.D. Mich. 2007), aff'd, 527 F.3d 538 (6th Cir. 2008). To establish such a claim of equitable estoppel here, Plaintiff must show: (i) conduct or language amounting to a representation of material fact; (ii) that Defendant was aware of the true facts; (iii) that Defendant intended for its representation to be acted upon, or that Plaintiff reasonably believed that Defendant so intended; (iv) that Plaintiff was unaware of the true facts; and (v) that Plaintiff reasonably or justifiably relied on the representation to his detriment. Sprague, 133 F.3d at 403 (citation and footnote omitted).[8]

The record here cannot sustain several of these elements of a claim of equitable estoppel. First, the Sixth Circuit has explained that "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents," but "can only be invoked in the context of ambiguous plan provisions." Sprague, 133 F.3d at 404. Plaintiff has not identified any such ambiguity in the Plan provisions that determine the amount of disability benefits to be paid. Neither has he identified any representation in the June 11, 2003 statement "that was inconsistent with the clear terms of the plan" on this subject. Marks, 342 F.3d at 456. Rather, the June 11, 2003 communication was wholly silent on the matter of disability benefits, and instead estimated the amount of retirement benefits

---

[8]It should be noted that Plaintiff has not asserted such a claim in his complaint, nor has he explicitly advanced an estoppel-based theory or addressed the elements of this theory in his response to Defendant's motion.

16

Plaintiff would receive at age 65.

Moreover, Plaintiff's claim of detrimental reliance is dubious, to say the least. At the time he received the June 11, 2003 statement, he had not worked in over a year (since February of 2002), but instead had applied for Social Security disability benefits. (See Admin. Record at 39 (indicating that Plaintiff applied for these benefits in September of 2002).) Yet, in his response to Defendant's motion, Plaintiff suggests that he abandoned his effort to return to work in reliance on Defendant's assurance that he had attained Benefit Class 18 and would receive benefits at that level.[9] Clearly, Plaintiff cannot plausibly contend that he chose a course of action in February of 2002 — *i.e.,* to cease any further attempt to return to work — based upon a communication he did not receive until June of 2003. Apart from the June 11, 2003 statement, however, Plaintiff has not cited any evidence of any other — much less earlier — assurance that he would receive benefits corresponding to Benefit Class 18.

Plaintiff's theory of detrimental reliance also assumes that his selection of a disability onset date is a matter of strategy or financial planning rather than brute fact. In the decision awarding Social Security disability benefits, the administrative law judge

---

[9]At one point, Plaintiff speaks of his "decision to retire" as having been made in reliance on this assurance. (Plaintiff's Response at ¶ 4.) As Defendant explained at a number of points in the administrative process, however, Plaintiff's entitlements to disability and retirement benefits are two entirely separate matters under the Plan, and nothing in his decision to apply for the former will alter the extent of his entitlement to the latter. Rather, Defendant has assured Plaintiff that upon attaining the age of 65, he will begin receiving retirement benefits in an amount entirely consistent with — and, in fact, slightly greater than — the amount set forth in the June 11, 2003 statement. (See Admin. Record at 30.)

noted that Plaintiff had applied for these benefits in September of 2002 "alleging disability since October 18, 2000." (Admin. Record at 39.) Surely, Plaintiff does not mean to suggest that this allegation — which, again, was made over 6 months after he stopped working, but well before he received the June 11, 2003 statement — was false, and that he just as well could have alleged and shown that he became disabled at a much later date, if only he had known that such a claim would have resulted in a larger monthly award of disability benefits under the Plan.[10] Indeed, Plaintiff made precisely the same allegation in his application for disability benefits under the Plan, once again identifying his date of disability as October 18, 2000. (Admin. Record at 75.) Because this factual assertion, when established to Defendant's satisfaction and plugged into the pertinent terms of the Plan, determined the amount of Plaintiff's disability benefits, and because nothing in the June 11, 2003 statement (or elsewhere in the record) suggests a different result, the Court finds no basis here for a claim of equitable estoppel.

Finally, Plaintiff suggests that Defendant acted arbitrarily and capriciously by failing to refer his claim to a "Special Hardship Appeal Committee" that is authorized, under certain circumstances, to award benefits "where substantial justice requires deviation from the specific eligibility rules of the Pension Plan." (Plan at Appendix H-3.)

---

[10]Notably, in order to obtain this larger award, Plaintiff would have had to have claimed a disability onset date after June of 2002, when his bargaining unit progressed to Benefit Class 18. This, of course, would have precluded any award of disability benefits — whether under the Plan or by the Social Security Administration — for the period prior to this claimed onset date. This is a considerable period, given Plaintiff's allegation — which he proved to the satisfaction of both the Social Security Administration and Defendant — that he became disabled on October 18, 2000.

As Defendant points out, however, the Plan refers to this "Special Hardship Appeal Committee" in Appendix H, which consists of a set of "special eligibility amendments" that were inserted into the Plan as a result of a class action settlement. (See id. at Appendix H-1.) The provisions in this appendix expressly apply only to those Plan participants "who are affected by" this class action settlement, (id.), and Defendant states without contradiction that Plaintiff is not a member of this class of individuals. Consequently, Defendant's failure to consider the terms of Appendix H in resolving Plaintiff's claim provides no basis for disturbing its award of disability benefits under Benefit Class 17b.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for judgment on the administrative record (docket #6) is GRANTED.

> s/Gerald E. Rosen
> Gerald E. Rosen
> United States District Judge

Dated: September 25, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 25, 2008, by electronic and/or ordinary mail.

> s/LaShawn R. Saulsberry
> Case Manager